AUGUST SEASTREAM et al.

*v.*

THE NEW JERSEY EXHIBITION COMPANY.

[Decided February 14th, 1905.]

</div>

1. The use of *ex parte* affidavits in procuring an order to show cause why respondents should not be adjudged guilty of contempt of court is proper where affiants are present at the hearing on the return and are offered for cross-examination to the persons named in the order.

2. An investigation as to alleged conduct in contempt of the court of chancery may be referred to the vice-chancellor or a master of the court.

3. A proceeding for contempt not committed in open court, being punitive in character, and hence not the subject of appeal, and which may affect property and liberty, ought not to depend on the judgment of a vice-chancellor or master in chancery, but is a matter for the personal attention of the chancellor.

On order to show cause why August Seastream, Benjamin T. Haagenson, Howard Griffiths, William Davis and another should not be adjudged guilty of a contempt of the court of chancery, for attempting to improperly influence the due administration of justice therein.

*Mr. Frank P. McDermott,* specially appointed.

*Mr. Allan L. McDermott,* for Haagenson, Griffiths and Davis.

*Mr. James Benny,* for August Seastream.

MAGIE, CHANCELLOR.

The bill in this cause was filed by August Seastream and Charles C. Alexander, as complainants for themselves and other residents of the city of Bayonne, against "The New Jersey Exhibition Company," a corporation of this state. Its purpose as indicated by its prayer was, among other things, to obtain an injunction restraining the company from permitting the playing of baseball or other sports upon grounds occupied by it in Bayonne, on the first day of the week, commonly called Sunday.

The bill, when filed, was presented to the Hon. Henry C. Pitney, one of the vice-chancellors, under the provisions of rule 204*a,* and application was made thereon for an order to show cause and a temporary restraining order. An order to show cause, including a temporary restraining order, was advised by him, and signed by me upon his advice.

The order to show cause was returnable at one of the chancery chambers and was brought to hearing before Vice-Chancellor Pitney, sitting for me in my absence. It was supported upon the affidavits appended to the bill, and other affidavits taken and served according to the practice of the court, and was objected to by the defendant upon affidavits presented by its counsel, taken and served in accordance with the practice.

Among the affidavits presented on behalf of the defendant company was one made by the complainant August Seastream. For present purposes it is sufficient to say that the sworn statements contained in the last-named affidavit were absolutely inconsistent with the statements contained in the affidavit of the same person which had been annexed to the bill, and upon which the pending order had been made. One of the other of the affidavits was evidently untrue.

Upon the presentation of the latter and contradictory affidavit the vice-chancellor before whom the matter was pending, evidently conceiving that a question arose thereon whether there had not been a violation of the law respecting perjury, requested Hon. John A. Blair, the judge of the court of common pleas and *ex-officio* judge of the quarter sessions of Hudson county, to investigate. Judge Blair is a master, and a special

master of this court, but the matter was not referred to him to take testimony as such master, or to report thereon to this court. If the request was in this respect irregular, the irregularity is of no consequence, for Judge Blair, although fixing times for investigation, and being attended by counsel for that purpose, did not proceed thereon, and mainly because of the absence of August Seastream. But afterward August Seastream did appear before him and was examined by the judge. His statements were put into the form of an affidavit and sworn to by him before Judge Blair. The wife of August Seastream was also examined and her affidavit taken by Judge Blair. These affidavits, with others, were presented to Vice-Chancellor Pitney, who thereupon advised an order upon August Seastream, Benjamin T. Haagenson, Howard Griffiths, William Davis and another, directing them to show cause why they should not be adjudged guilty of a contempt of court in attempting to improperly influence the administration of justice therein. The order was signed by me upon his advice.

The order was accordingly brought to hearing before Vice-Chancellor Pitney, the persons named therein appearing before him and being represented by counsel. The affidavits on which the order to show cause was granted (including those made by August Seastream and his wife before Judge Blair) were before the court. The Seastream affidavits, although *ex parte,* were properly used in procuring the order to show cause. When that order was upon hearing, both August Seastream and his wife were produced, offered to the persons named in the order for cross-examination, and were examined, the latter by the vice-chancellor, when no cross-examination was demanded. The facts in the affidavits taken before Judge Blair were substantially restated and sworn to in the oral testimony of both Seastream and his wife.

Vice-Chancellor Pitney, conceiving that the matter was one which affected the dignity and the authority of the court, with my approval, requested Mr. Frank P. McDermott, a member of the bar, to attend at the hearing and the presentation of the evidence and to examine and cross-examine the witnesses. It is

proper to say that the gentleman selected performed the duties imposed upon him by the request in an eminently satisfactory and impartial manner.

The hearing of the order to show cause was upon evidence orally taken and stenographically reported. It occupied some time in taking, and the parties accused were given every opportunity to present evidence to be heard.

Vice-Chancellor Pitney took time to consider the matter, and afterward furnished me with his conclusions, in writing, as to the facts proved, and requested me to attend at the time he should announce his conclusions, to consider and determine what should be done thereon, which I consented to do.

When I attended for that purpose, counsel for the accused parties made application to me to rehear the whole matter. Their contention was that the proceeding was an inquiry into conduct alleged to have been directed to the injury of the court of chancery in its dignity and authority in the administration of justice, and that as the court of chancery constitutionally consists of the chancellor, he ought personally to conduct the proceedings and take the evidence on which his judgment should be rendered. I found myself unable to agree with this view. In my judgment, I would have been justified in directing any master of my court to investigate such an accusation and to report to me the facts, and I could justifiably act upon such report. Under the present practice of the court, an investigation by a vice-chancellor and a report from him, is not only proper, but more desirable. Therefore, I should not have hesitated to adopt the conclusions of the vice-chancellor, and even to have made a decree or order advised by him, but for other considerations.

There were two other considerations which were deemed by me to require a review of the whole matter. One was that the report of a master, if the matter had been referred to a master, could have been challenged by exceptions, which would have required some review. The other, and more controlling, consideration was that, since this proceeding is one purely punitive in character, and therefore not the subject of appeal (*Frank* v.

*Herold, 64 N. J. Eq. (19 Dick.) 371*), the result reached (which may affect property and liberty) ought not to depend upon the judgment of a single judicial officer unless necessary, as, for example, in the punishment of a contempt of court, committed in open court. In this aspect, I think such a case is a fair exception from the rule enunciated in *Gregory* v. *Gregory, 67 N. J. Eq. 7*, respecting review of the conclusions of vice-chancellors under the acts creating that position as an aid in the conduct of the business of the court of chancery.

In consequence of this conclusion, I heard counsel for the accused parties, and have examined the whole matter. The stenographer's notes of evidence have been read and reread. I have endeavored to reach conclusions thereon, uninfluenced by the results of the vice-chancellor's examination. It is with sincere regret that I feel bound to say that my conclusions are those which he reached and expressed in his opinion furnished to me.

The result is that August Seastream, Benjamin T. Haagenson, Howard Griffiths and William Davis must be pronounced guilty of the contempt charged, and it only remains to declare my judgment as to the penalty that should follow.