PERRINE R. COOK, RESPONDENT, v. BENNETT GRAVEL
COMPANY, APPELLANT.

Submitted December 7, 1916—Decided March 5, 1917.

Under a proper construction of the Timber act (*Comp. Stat., p.* 5396),
a plaintiff in an action for a violation of the provisions of that
act is limited in his recovery to the actual loss sustained by him
if the wrongful acts complained of have been committed by the
defendant under an honest belief that he was cutting timber upon
his own property, and the question of whether or not defendant
has such belief is a question for the determination of the jury.

On appeal from the Monmouth Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices TRENCH-
ARD and BLACK.

For the appellant, *Durand, Ivins & Carton.*

For the respondent, *Charles F. Dittmar.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The appeal in this case brings
up for review a judgment recovered by the plaintiff, Mr.
Cook, in an action brought under an act entitled "An act to
prevent the unlawful waste and destruction of timber in
this state" (*Comp. Stat., p.* 5396), the complaint being that
the defendant had unlawfully cut down one hundred and
seventy-three trees growing upon the plaintiff's land, and the
claim being that under the statute referred to the plaintiff
was entitled to recover from the defendant a penalty of $8
for each tree so unlawfully cut down. The defence inter-
posed was that the trees which were the subject-matter of
the litigation were growing, not upon the property of the
plaintiff, but upon that in the ownership of the defendant,
and a large amount of testimony was taken on both sides for
the purpose of settling the location of the dividing line be-

tween their respective properties. The trial court instructed the jury that if they should find the trees which had been cut down by the defendant were growing upon the plaintiff's side of the line, then, under the Timber act, he was entitled to recover the penalty prescribed therein, without regard to the amount of damage actually sustained by him through the wrongful act of the defendant.

The only question raised by the present appeal is whether the instruction just recited was sound in law. On behalf of the plaintiff it is contended that it is immaterial in the determination of a right of recovery under the statute, whether the defendant acted in good faith and in an honest belief that it was cutting timber upon its own property, or whether it was guilty of a willful and intentional trespass; while on the other hand, it is argued on behalf of the defendant that where the acts complained of are done in the honest belief by the defendant that he is cutting timber on his own property, the plaintiff's right of recovery is limited to the actual loss sustained by him from the cutting of the timber.

It goes without saying that the soundness of the one contention or the other depends upon the true construction of the Timber act. The history of that statute is set out in the opinion of the Court of Errors and Appeals in the case of *Terrone* v. *Harrison*, 87 *N. J. L.* 541. It was originally enacted in 1820. *Penn. Laws* 700. Its first section provides that if any person shall cut down, carry away or destroy any tree, sapling or pole, standing or lying on any land within this state to which said person has not any right and title, without leave first had and obtained of the owner or owners of said land, the person so offending shall forfeit and pay for each tree, &c., so cut down, carried away or destroyed, the sum of $8. The second section of the statute made the same offence criminal, and punishable by a fine or imprisonment, but contained a proviso that a person who had been subjected to a prosecution for the penalty provided in the first section, should not be subject to conviction and punishment criminally. The third section provided that if any

person should saw up any log, or receive or buy any tree, sapling, log or timber so unlawfully taken and carried away, knowing the same to have been so unlawfully taken and carried away, he should be deemed guilty of a misdemeanor and punished by fine or imprisonment. In 1874 the second and third sections of this act were transferred to the Crimes act, but, as was held in *Terrone* v. *Harrison, supra,* such transfer did not operate to repeal section 1 of the act, but left it in full force and effect. The matter for solution, then, is whether the legislature in 1820 intended that the penalties of the statute then enacted should be visited upon a person who, in good faith, should cut down trees standing upon lands of another, believing that they were upon his own property.

It is to be observed that the same act which by section 1 subjects the perpetrator to a penalty, subjects him by the second section to a criminal prosecution. It is hardly to be supposed that the legislature intended to make criminal an act done in perfect good faith, and under a claim of right fully believed in; and yet such a purpose must be attributed to the lawmaking body if the first section of the statute subjects the unintentional offender to a penalty; for if the element of intent is absent from the first section, it must also be absent from the second.

Moreover, the statute of 1820, although an original enactment, was largely taken from the act of June 13th, 1783. *Pat. L., p.* 49. The first section of the earlier act is adopted almost *verbatim* in the act of 1820, the only difference being that the penalty prescribed is three pounds for each tree, &c., instead of $8. In 1818, Mr. Justice Southard, speaking for this court in *Thompson* v. *Burdsall,* 4 *N. J. L.* 173, declared that this statute only imposed a penalty where the party had no justification for his trespass, and not where he relied upon his title to protect him; and the soundness of this declaration is made manifest by section 2 of the act of 1783, which declared "that if any person or persons shall saw any log or logs *so stolen,* knowing them to be such, they and every person so offending shall on conviction," &c., &c. The

use of the words italicized makes it plain that it was the intention of the legislature in enacting section 1 to deal with persons who, without any shadow of right, or belief in its existence, tortiously cut down and removed standing timber upon lands not belonging to them.

The first section of the act of 1783 having been embodied in the enactment of 1820, the legislature which passed the later act is to be presumed to have adopted the earlier one with the meaning which had already been ascribed to it by judicial construction. *Fritts* v. *Kuhle,* 51 *N. J. L.* 191, 199; *Anderson* v. *Camden,* 58 *Id.* 515, 519; *De Raismes* v. *De Raismes,* 70 *Id.* 15, 18; *Neilson* v. *Russell,* 76 *Id.* 27, 32; *Rutkowsky* v. *Bozza,* 77 *Id.* 724, 725.

In the present case it should have been left to the jury to determine whether the wrongful acts complained of were committed by the defendant under an honest belief that it was cutting timber upon its own property, coupled with an instruction that if they should so find the plaintiff's damages should be limited to the actual loss sustained by him through the wrongful act of the defendant.

The judgment under review will be reversed.