In the matter of GEORGE F. SCHMIDT, charged with contempt of court.

[Decided October 1st, 1917.]

1. On hearing of rule in contempt proceedings the *ex parte* affidavits upon which the order was based in part could not be used, but the facts therein stated could be elicited upon testimony in open court.

2. Respondent, member of local exemption board appointed to examine men drafted for the army, given the use of the chancery chambers by the sergeant-at-arms, who, after being informed while in possession in the forenoon that one of the vice-chancellors was in the court house and wanted the room for the business of the court, retained possession all day, was guilty of contempt, especially where he enjoyed an hour's recess for lunch without endeavoring to communicate with the vice-chancellor, and his assertion that he did not know where the vice-chancellor was and did not think about the matter, was no excuse, as neither carelessness nor forgetfulness is a defence.

3. As the accused disclaims any intention to contemn, protests respect for the court, and makes submission to it, the court will follow the general rule and inflict no punishment.

On hearing of rule in re contempt before Walker, chancellor, and Lewis, vice-chancellor.

*Mr. John W. Griggs,* prosecutor, for the rule.

*Mr. George F. Schmidt, pro se, contra.*

Opinion by the Court.

It having been represented to the court by affidavit and otherwise that on the 8th day of August, 1917, the respondent, George F. Schmidt, with certain associates, constituting a federal exemption board for the examination of men drafted for the military service of the United States, took possession of the chancery court room and retiring room adjacent, situate in the court house, in the city of Paterson, constituting the chancery chambers in that city, and of which this court has exclusive control; that the respondent received notice from one of the vice-chancellors on the preceding day (August 7th) that on August 8th the chancery chambers would be required by the vice-chancellor for the trial of causes in this court, and that notwithstanding such notice the respondent took possession of the chambers on August 8th, 1917, in the forenoon, and excluded the vice-chancellor and his court therefrom, and when notified in the forenoon of that day by the vice-chancellor to vacate, so as to leave the chambers for the occupation of the vice-chancellor and the transaction of the business of this court at two o'clock in the afternoon, he refused to do so and remained in possession thereof during the whole of Wednesday, both forenoon and afternoon, thereby preventing the vice-chancellor from holding court in the chancery chambers on that day; that this conduct of the respondent was without permission of this court and in disobedience of its direction, and that the respondent thereby obstructed and interfered with the administration of justice, and particularly with the trial of certain causes which were set for trial on the 8th day of August, 1917. An order was thereupon made, of the court's own motion, requiring Mr. Schmidt to show cause before the court why he should not be adjudged guilty of contempt of the power, authority and dignity of the court of chancery in respect to, and of, his conduct aforesaid, and why he should not be punished therefor.

On the hearing the respondent made an oral statement in his own defence. He said that the local exemption board No. 2 (of which he was chairman), appointed to examine candidates for the army, had no place to go to in the court house, and the sergeant-at-arms of the chancery chambers, he believes, gave

them the chambers, stating that the vice-chancellor would not be there that week; that in the course of his and their duties of examining conscripts on Wednesday, August 8th, word was sent to them that they should vacate the room; that they were very busy doing their work and it would not have been convenient to move at that time, and that it was impossible for them to give up the room; that as soon as they heard that the vice-chancellor would be there the following week they did vacate the room and made other arrangements; that they did not take the room; they were placed there and had no intention whatever of committing any contempt of the court of chancery. Asked if he had learned that the vice-chancellor was in the court house and intending to go on with the trial of a case and wanted possession of the room, Mr. Schmidt said, yes, he was told in substance that the vice-chancellor wanted the room, but that they went ahead with their work; that he had no time to communicate with the vice-chancellor, as they were up to their ears and above their heads with the work of the board. Asked if they did not take an adjournment for lunch that day, Mr. Schmidt replied that they did, from one to two o'clock. Asked if he could not have communicated with the vice-chancellor then, he said he did not know where the vice-chancellor was and did not inquire as he did not think anything about it. Mr. Schmidt concluded his statement by asserting that he had due and full respect for the power, authority and dignity of the court of chancery, and intended no contempt of that court by the use of its room, and submitted himself to the court.

We think it entirely unimportant, in view of the conclusion to which we have come, whether Mr. Schmidt were warned on one day that he and his associates should not use the room on the next day, as appears from the affidavit on which the rule in part is based, or whether he only received the notification that it was wanted for the vice-chancellor on the very day the vice-chancellor desired possession, as appears from the statement made by him, Schmidt. While the *ex parte* affidavit cannot be used on the hearing of this rule (*Staley* v. *South Jersey Realty Co., 83 N. J. Eq. 300*), the facts therein stated could still be elicited upon testimony in open court where the respondent could be

present and have an opportunity to cross-examine the witness, if, as already remarked, it were important; but it is not.

That the respondent was guilty of contempt appears from his own statement that while in possession of the court room, he was informed that the vice-chancellor was in the court house and wanted the room for the business of the court, especially in view of his further statement that he enjoyed an hour's recess for lunch without having endeavored to communicate with the vice-chancellor. His assertion that he did not know where the vice-chancellor was, and did not think about the matter, is no excuse.

Neither carelessness nor forgetfulness is a defence.

A case directly in point is that of *In re Lyman, 55 Fed. Rep. 29,* in which Judge Brown, in the United States district court for the southern district of New York, held that an unlawful ousting of the court, its officers and records, from their rooms, would be a contempt; and that a threatened attempt to do so might be enjoined.

And such a contempt would be *in facie curiæ.* See *In re Merrill,* opinion by Walker, ordinary, filed August 31st, 1917, and not yet reported.

Courts, however, are loath to punish for contempt, and where the accused disclaims any intention to contemn, protests respect for the court and makes submission to it, the court will, as a general rule, inflict no punishment.

In the case at bar, considering Mr. Schmidt's protestation of respect for the court of chancery, his entire lack of intention to contemn its authority or dignity, and his submission to the court, we see nothing to take the matter out of the general rule, and, therefore, no judgment will be pronounced.

It is not inappropriate to remark that there is, and has been, no conflict of authority between the state and federal governments—that is, between the court of chancery and the district exemption board above mentioned. There were other rooms in the court house which could have been used by the board. It was, and is, simply a question between the court and the respondent to the rule.