In the matter of GEORGE E. JENKINSON, JR., a solicitor in chancery, charged with contempt of court.

[Decided July 12th, 1922.]

1. It is a contempt of court for anyone to threaten or treat injuriously a ministerial officer or other person who is under the immediate protection of a court of justice.

2. It is a direct criminal contempt *in facie curiæ* for a solicitor to insult the clerk in chancery when addressed by him in a communication emanating from the chancellor.

On order to show cause why George E. Jenkinson, Jr., a solicitor in chancery, should not be adjudged in contempt of the power, authority and dignity of the court of chancery of New Jersey, and why he should not be punished therefor.

*Mr. William J. Backes,* assigned to prosecute, for the motion.

*Mr. George E. Jenkinson, Jr., pro se.*

WALKER, CHANCELLOR.

It appearing to the chancellor by the affidavit of Mr. E. Milford Appelgate, chief clerk of the office of the clerk of the court of chancery of this state, that he, for and in the name of the clerk in chancery, and as his representative, wrote and sent to George E. Jenkinson, Jr., the solicitor of Eugenia F. Johnston

and husband, mortgagors of a fund belonging to a ward of this court, several letters concerning interest due on the mortgage which runs to the chancellor, which interest was in arrears; and in the last letter to Mr. Jenkinson, dated January 4th, 1922, he, Jenkinson, was advised that the matter had been called to the attention of the chancellor, who instructed him, Appelgate, to say that unless the interest was forthwith paid into court, he, Jenkinson, would be served with an order to show cause, and this, because Jenkinson had been notified in the course of the correspondence that Mrs. Johnston informed the clerk in chancery that he, Jenkinson, her solicitor, had received the interest; and it further appearing that shortly after the writing and mailing to Jenkinson of the last-aforesaid letter of January 4th, 1922, there was received in the mail of the clerk in chancery, addressed to him, that original letter with an endorsement on the back thereof in typewriting, signed by Jenkinson, in his own proper handwriting, in which, among other things, he said:

"I would have knocked your head off your shoulders if you had been within reach at any time since I received this letter of yours, but I suppose the fault was mine, really, because of my failure to answer when you wrote me. However, don't you ever write me in such style again, until you are more sure of your facts.

GEORGE E. JENKINSON, JR."

This communication to the clerk in chancery is a flagrant contempt of court.

The contempt with which we are here dealing is a direct criminal contempt, not a civil one which is remedial in character and for the coercion of one party for the benefit of another. Direct contempts are those usually referred to as contempts in the face of the court (*in facie curiæ*). But this does not mean that such contempts must be committed while the judge is presiding in open session in the court room. *In re Merrill, 88 N. J. Eq. 261, 275.*

*In re Woolley, 11 Bush (Ky.) 95,* the supreme court was concerned with a contempt committed in the use of offensive language in a petition for the rehearing of a case, which counsel addressed and sent to the judges. The court said (at *p. 99*):

"Woolley's offences were committed in the presence of the court. The petition for rehearing is not a pleading, but an argument addressed to the court and to the individual members of the court. His statement was in most respects personal to himself and was intended to be so considered. The petition was the counsel's argument in support of the motion for a rehearing, and the counsel, and not the client, is responsible to the court for the character of the argument and for the insinuations, imputations and charges which the petition may contain. Written or printed arguments, whether in the shape of briefs or petitions for a rehearing, are filed in open court, are signed by counsel, and are addressed to the court just as oral arguments are addressed, and to incorporate into such arguments contemptuous, scandalous or insulting matter is to commit in open court an act constituting a contempt. * * *

"The object in citing him to appear was not to enter into an inquiry as to whether at some time or place out of court he had, by acts or words spoken, written or printed, committed a contempt of the court, but to afford him an opportunity to purge the contempt committed in court by explanation, apology or retraction, or, in case of his refusal or failure to do so, to allow him to show cause why punishment should not be inflicted."

The Kentucky case goes on to show that in the case of *Lechmere Charlton, 2 Myl. & Cr. 317,* the lord-chancellor adjudged Charlton, who was a barrister, in contempt, because he sent a letter to one of the *masters* of the court, containing matter scandalous with respect to the master, and an attempt to improperly influence him in his conduct of the matter pending before him, for which the lord-chancellor sent him to prison.

It is a contempt of court for anyone to threaten or treat injuriously a ministerial officer or other person who is under the immediate protection of a court of justice. See *4 Bl. Com. 124, 126.*

Now, it is perfectly obvious that a letter written to the clerk in chancery concerning a matter being administered in court and in response to a letter of the clerk reciting a direction of the chancellor to the writer of the letter, is a communication to

all intents and purposes addressed to the chancellor himself, whose official representative and ministerial officer the clerk is. When the clerk wrote Jenkinson that the chancellor had instructed him to say to him, Jenkinson, that unless the interest was paid forthwith into court, he, Jenkinson, would be served with an order to show cause, his reply to the clerk that he would have knocked his head off his shoulders if he had been within reach at any time since he, Jenkinson, received the letter, was intended to be, and in fact was, exhibited to the chancellor, as a communication in the premises.

On the return of the order to show cause the respondent admitted the facts above set out (except that he claimed not to have received one of the letters mailed him by the clerk prior to that of January 4th, 1922) and said that he did not intend any contempt of court or insult to the clerk. This statement is absurd and is unavailing. The answers of a respondent charged with contempt of a court of equity do not have to be accepted as true as in courts of law. *In re Merrill, supra* (at *p. 282*). But even in courts of law the rule that answers must be accepted as true does not control where the matter spoken or written is of itself necessarily offensive or insulting. The meaning and intent of a respondent must be judged by a fair interpretation of the language he used; and he cannot escape responsibility by claiming that his words did not mean what any reader must understand them to mean. *Ibid.* (at *p. 283*).

The only case called to my attention in which a somewhat similar situation is said to have been involved is *Watson* v. *People, 11 Col. 4*, in which an attorney, in a quarrel with the clerk of a court over the entry of a judgment, when the court was not in session, and where the words did not reflect upon the court and were spoken out of its presence, was held not guilty of contempt of court. But that case is clearly to be distinguished from the one at bar. The court in that case observed (at *p. 5*) that the subject of the quarrel did not extend to or include any act of the court or judge. In the case at bar the chancellor sent word to the respondent through the clerk, who, respondent, replied that if the clerk had been within reach when

he, respondent, got the letter he would have knocked his, the clerk's, head off. The clerk was the representative of the court for whom he was acting ministerially. If such a state of facts as are here present had been before the Colorado court, I make no doubt that its decision would have been a finding of guilty against the offending attorney.

In the old days of the *duello* the parties who gave and accepted in writing challenges to mortal combat addressed each other in scrupulously polite language. In the *Romance of Duelling* (*Steinmetz, London, 1868, pp. 94, 95*) it is stated that the accredited mode of duelling was to conduct the affair with the greatest possible politeness, expressing the challenge clearly, avoiding all strong language; and a form of letter is given, commencing "Sir" and ending "Your obedient servant." This is an illustration that there is neither justification nor excuse for the use of intemperate and unconventional language in written communications between gentlemen. And attorneys and solicitors are in duty bound to deport themselves gentlemanly in their conduct toward judges and the officers of courts of justice.

The respondent is guilty of contempt of this court, and the fact that he did not have his client's money for the purpose of paying interest on her mortgage, is no mitigation of his offence. He could as easily, and would much better, have addressed the court through the clerk in language polite and dignified, instead of indulging in billingsgate.

The respondent will be directed to appear on a day to be fixed to receive the judgment of the court.