34 N.J. Super. 408 (1955)
112 A.2d 565
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES J. GUSSMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1955.
Decided March 7, 1955.
*410 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. James Rosen argued the cause for plaintiff-respondent (Messrs. Milmed & Rosen, attorneys).
Mr. James A. Major argued the cause for defendant-appellant.
The opinion of the court was delivered by CLAPP, S.J.A.D.
Charles J. Gussman was convicted by the Municipal Court of the Township of Weehawken of contempt of court for writing and mailing a letter. The letter, which was provoked by a ticket given him for speeding through the Lincoln Tunnel, reads:
 "Mr. George L. McNally,
 Judge, Municipal Court,
 Weehawken, N.J.
Sir:
In reference to Summons number 4934, bail receipt number 401:
As the arresting officer is not to appear at the scheduled hearing and since all you would be called on to decide would be the veracity of the officer as against mine, it is manifestly futile for me to drive a hundred and twenty-five miles [from Mr. Gussman's residence in Pennsylvania] to attempt to establish my innocence. Hence, I shall not go to the trouble.
This is, I realize, the reason I was chosen for the shake-down: in the corrupt municipalities along the Jersey side of the Hudson it is notorious that you arrest largely those with out-of-state licenses; they haven't a vote, they weigh inconvenience and futility against their indignation at the decadent morality they encounter.
You, sir, are a party to this degeneracy, whether you choose to acknowledge it or not. The police lieutenant (name on bail receipt illegible) was rude and arrogant and the arresting officer dishonest and foul-mouthed because both realized they could count on being supported by the fraternity of mutual immorality you share with them.
Let me assure you, however, that the twenty-five dollars extorted from me is not a profit to those of you whose pockets it reaches. Because I address readers of thirty-nine newspapers thru my weekly column and reach almost three million radio homes with my program Weehawken will, in adverse public relations resulting from mentions I make in years to come, suffer a loss many, many times the amount extorted from me.
Shame on you, sir, for participating in the degradation of democratic processes.
 I am,
 Sincerely,
 Charles J. Gussman"
*411 Gussman sent copies of the letter to the Mayor of Weehawken and the Weehawken Chamber of Commerce.
The case was tried below before a judge of the Hudson County Court specially assigned to the municipal court for the cause, and Gussman was sentenced to the Hudson County Jail for ten days. Gussman by this appeal challenges the conviction, first, as violating his right of free speech and, second, as lying beyond the power of the court.
Little attempt seems ever to have been made to state broadly and with any precision the limits of the great concept of free speech. That it is not an absolute, is a commonplace observation. Kovacs v. Cooper, 135 N.J.L. 64, 68 (Sup. Ct. 1946), affirmed 135 N.J.L. 584, 587 (E. & A. 1947), affirmed 336 U.S. 77, 85, 69 S.Ct. 448, 93 L.Ed. 513 (1948); Thomas v. Casey, 121 N.J.L. 185, 187 (Sup. Ct. 1938); State v. Boyd, 86 N.J.L. 75, 79 (Sup. Ct. 1914), affirmed 87 N.J.L. 328 (E. & A. 1915).
The State refers us to the New Jersey Constitution, Art. 1, par. 6 (a provision found in many state constitutions, 8 Cooley's Constitutional Limitations (8th ed.), 876) 
"Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right."
But this plainly gives us no standard to go by. Chafee, Free Speech in the United States 12 (1942).
Gussman cites Bridges v. California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941); Pennekamp v. Florida, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946); and Craig v. Harney, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947), cases of contempt. They hold, he says, that all criticism of a court is suffered by the Constitution, unless it engenders an "extremely serious" and "extremely" imminent likelihood, cf. State by Van Riper v. Traffic Tel. Workers' Fed. of N.J., 2 N.J. 335, 347 (1949), of producing an unfair trial.
This is the "clear and present danger" test taken by Justice Holmes perhaps from the law of criminal attempts. Hall, 50 Harv. L. Rev. 583, 621 (1937); but cf. Howe, 55 Harv. *412 L. Rev. 695 n. 2 (1942). The question whether the law may in some cases be moving away from an adherence to this test, need not detain us. Mendelson, 52 Col. L. Rev. 313 (1952); Thorp v. Bd. of Trustees of Schools for Industrial Ed., 6 N.J. 498, 511 (1951); cf. Richardson, 65 Harv. L. Rev. 1 (1951).
For clearly the test is no universal solvent. It is no gauge controlling the law of libel and slander, rendering speech actionable only in case of a clear and present danger of some substantive evil. Cf. 8 Cooley, supra, 883. Nor, according to the accepted view, does it lead to the exoneration of all verbal contempts in the courtroom other than those which create an extremely serious and extremely imminent prospect of bringing about a miscarriage of justice. Fisher v. Pace, 336 U.S. 155, cf. 163, 69 S.Ct. 425, 93 L.Ed. 569 (1949). Indeed the Bridges case (314 U.S., at page 266, 62 S.Ct. 195) and the Pennekamp case (328 U.S., at page 335, 66 S.Ct. 1031) concede there was of course no question as to the power to punish for "disturbances and disorder in the courtroom."
Lacking, then, a broad standard, we must inspect the public and individual interests involved in the argument. The Bridges, Pennekamp and Craig cases were concerned with a very different matter from what we have here. There the court was concerned with comment by the public press, save that in the Bridges case there was also a threat of a strike, made by Bridges through a telegram to the person to whom he had the constitutional right to petition. There quite plainly the court was dealing with the great public interest in leaving truth to "the competition of the market." Abrams v. United States, 250 U.S. 616, 630, 40 S.Ct. 17, 63 L.Ed. 1173 (Holmes, J., 1919). As Milton (Areopagitica 51, Hales ed. 1917) put it in his ringing words:
"And though all the windes of doctrine were let loose to play upon the earth so Truth be in the field, we do injuriously by licencing and prohibiting to misdoubt her strength. Let her and Falsehood grapple * * *."
*413 The rule is that all speech is to be protected, cf. Adams Theatre Co. v. Keenan, 12 N.J. 267, 277 (1953), save as some exception can justify itself. Here we have a public interest in maintaining a sufficient respect for the courts, at any event so that the very defendant served with a ticket may not, in place of an appearance on the return day, turn on the court and flout it to itself  and with gross accusations, insolence and, in a way, defiance. This is not a case that excites society's interest in truth and individual liberties.
In Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925), a lawyer wrote a derogatory letter to a judge and had his client deliver it to him in chambers. No one seems to have supposed he was entitled to protection under the Constitution. Here the circumstances are not so very different, and we conclude, there simply is no sensible basis for extending to them the great public concerns of free speech. Gussman's first contention fails.
His second contention is that the contumacious act here was not committed in the court's actual presence, and that this leaves the court without power in the premises.
It must be taken as settled law that municipal courts, apart from statute, have an implied authority to punish for contempt. Board of Health, Weehawken Tp. v. N.Y. Central R. Co., 10 N.J. 284 (1952), dealing with a conviction for contempt entered (see 10 N.J., at 298) 12 days before N.J.S. 2A:10-7 became effective. But it is quite another thing to say  and we express no opinion on the point  that because of the doctrine of separation of powers, this authority is one that cannot be impaired by the Legislature. See Ex parte Robinson, 19 Wall. 505, 86 U.S. 505, 510, 22 L.Ed. 205 (1873), distinguishing a court which derives its existence and powers from the Constitution; Frankfurter and Landis, 37 Harv. L. Rev. 1010, n. 2 and 3, 1012 et seq. (1924); Nelles and King, 28 Col. L. Rev. 401, 523, 554 (1928) as to "theory of power"; Fox, Contempt of Court (1927), 218, 220-223 (1927); Baltimore Radio Show v. State, 193 Md. 300, 67 A.2d 497, 506 (Ct. App. 1949); cf. In re Schwartz, 134 N.J.L. 267, 269 (E. & A. 1946); State v. Doty, 32 *414 N.J.L. 403, 404 (Sup. Ct. 1868); Swanson v. Swanson, 8 N.J. 169, 185 (1951), supra.
We concern ourselves, not with the extent of inherent judicial power, but with the statutes. N.J.S. 2A:10-7 states that municipal courts and certain other courts shall have full power to punish for contempt in any case provided by N.J.S. 2A:10-1. N.J.S. 2A:10-1 declares (so far as pertinent) that this power
"to punish for contempt shall not be construed to extend to any case except the:
a. Misbehavior of any person in the actual presence of the court."
N.J.S. 2A:10-1 came into our law as L. 1917, c. 37, shortly after the courts decided Croasdale v. Atlantic Quarter Sessions, 88 N.J.L. 506 (Sup. Ct. 1916), affirmed 89 N.J.L. 711 (E. & A. 1916), and In re Verdon, 89 N.J.L. 16 (Sup. Ct. 1916)  reversed on other grounds Hudson County Quarter Sessions v. Verdon, 90 N.J.L. 494, cf. 503 (E. & A. 1917). The original bill, as asserted in the statement appended to it, was modeled upon (though more restrictive than) the federal act of 1831, now 18 U.S.C.A. § 401, which takes us back to a chapter of American legal history that has several times been interestingly told. Frankfurter and Landis, supra; Nelles and King, supra; Deutsch, 27 Minn. L. Rev. 296 (1943). The 1917 act  if we may judge from the Croasdale and Verdon cases  and the federal act were prompted by punishments of newspapers for criticism of a court out of the court's presence. As we have seen, Bridges v. California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941), supra, and the cases following it, above cited, have satisfactorily disposed of this problem. So much for the historical aspects of the 1917 statute.
Our concern is with the statutory words "actual presence." It will be seen that they have received a somewhat free rendering in our cases. After an extended discussion in In re Merrill, 88 N.J. Eq. 261, 283 (Prerog. 1917), it was held that a contempt in the court's actual presence, a contempt in the face of the court (in facie curiae) and a direct contempt *415 were synonymous, and include the mailing of a letter to the Ordinary "if he receives and reads it" (p. 280). A contempt in the face of the court has been held to embrace a number of acts performed outside the courtroom or in the absence of the judge: the filing of a contemptuous brief, In re Glauberman, 107 N.J. Eq. 384, 389 (1930), a decision of the Court of Errors and Appeals; the sending of an insulting letter to the Clerk in Chancery, In re Jenkinson, 93 N.J. Eq. 545 (Ch. 1922); the failure to relinquish Chancery Chambers on being informed (the vice-chancellor not being present) of the court's wish to use them, In re Schmidt, 88 N.J. Eq. 21, 24 (Ch. 1917); false swearing before a master, In re Caruba, 139 N.J. Eq. 404, 412 et seq. (Ch. 1947), affirmed in an opinion in the Court of Errors and Appeals 140 N.J. Eq. 563 (1947), holding this to be in the "actual presence" of the court. An attorney causing a paper to be presented for filing without paying the clerk's fees commits a contempt expressly declared by our rules to be a "contempt in facie curiae," R.R. 4:5-7.
Swanson v. Swanson, 8 N.J. 169, 184 (1951), indicated that an act of contempt may be in facie curiae though the judge does not see or hear it, and the case pointed out that this is a distinction maintained by our rules. See the pertinent rule as to the municipal court, R.R. 8:8, taken from Rule 42 of the Federal Rules of Criminal Procedure which, as the Advisory Committee on the Federal Criminal Rules has said 
"is substantially a restatement of existing law, Ex parte Terry, 128 U.S. 289 [9 S.Ct. 77, 32 L.Ed. 405]; Cooke v. United States, 267 U.S. 517 [45 S.Ct. 390, 69 L.Ed. 767]."
As above stated, Cooke v. United States was a case where an attorney wrote a contumacious letter to a judge and caused another to deliver it to the judge in chambers. The Supreme Court indicated he had committed contempt in the presence of the court. It might be observed at this point that acts of attorneys in the sending of a letter and the filing of papers *416 are held in the above cited cases and R.R. 4:5-7 to be in the face of the court; they are not regarded therein as "official transactions" within the intendment of N.J.S. 2A:10-1 and 18 U.S.C.A. § 401. Ex parte Bradley, 7 Wall. 364, 74 U.S. 364, 374, 19 L.Ed. 214 (1869).
For other cases of contempt, see Seastream v. New Jersey Exhibition Co., 69 N.J. Eq. 15 (Ch. 1905), affirmed 72 N.J. Eq. 377 (E. & A. 1907); McCauley v. McCauley, 88 N.J. Eq. 392, 395 (Ch. 1918); and Sachs v. High Clothing Co., 90 N.J. Eq. 545 (Ch. 1919), papers filed with the court; In re Bowers, 89 N.J. Eq. 307 (Ch. 1918), a threat made out of court to a solicitor; In re Megill, 114 N.J. Eq. 604 (Ch. 1933), a resolution of a municipal governing body criticizing the court; cf. In re Jibb, 123 N.J. Eq. 251 (E. & A. 1938), taking a false affidavit, "to be used" in Chancery, held not in the court's presence.
This is a substantial body of authority, and we do not think we should dismiss it and substitute our own view. Nearly all the cases stem from In re Merrill, 88 N.J. Eq. 261, 283 (Prerog. Ct. 1917), supra, and In re Caruba, 139 N.J. Eq. 404, 413, 422, 423, 426 (Ch. 1947), affirmed 140 N.J. Eq. 563, 564 (E. & A. 1947), which construe the phrase "actual presence." This body of authority colors the phrase as we see it today.
When the statute was enacted as a part of Title 2A, the last sentence was added, doubtless to meet the adverse decisions of In re Merrill, supra, and In re Caruba, supra, insofar as they dealt with the inherent constitutional jurisdiction of Chancery and the Prerogative Court. But those cases, as above stated, also put a liberal construction on the concept of actual presence. When the Legislature reenacts a portion of a statute after it has been construed in the cases, the courts are somewhat more reluctant to overrule that construction. Cook v. Bennett Gravel Co., 90 N.J.L. 9, 12 (Sup. Ct. 1917); Ross v. Miller, 115 N.J.L. 61, 64 (Sup. Ct. 1935); State v. Moresh, 122 N.J.L. 77, 79 (E. & A. 1939); State v. Deegan, 132 N.J.L. 261, 268 (E. & A. 1944); D., L. & W.R. Co. v. Division of Tax Appeals, 3 *417 N.J. 27, 37 (1949); Hooton v. Neeld, 12 N.J. 396, 403 (1953).
Weighing the pros and cons, we conclude that the statutory words "misbehavior * * * in the actual presence" are to be held to include the sending of this letter to the magistrate at his court and the reading of it by him. Gussman's second contention therefore fails.
Gussman urges us to substitute a fine for the jail sentence which was imposed below. When the State's counsel suggested to Gussman on the stand that between the time he dictated the letter and the time he mailed it, he had had three days to reconsider whether to send it, he replied that he had left home for those days 
"It was an automatic," he said, "it was out of my hands once it had been dictated and signed."
But is this entirely so? The letter, he says, was not transcribed until the third day, and he therefore doubtless did not sign until then.
We have his counsel's apology for him in the form of leading questions below and an earnest plea before us, but no substantial evidence of any genuine regret, on Gussman's part, as to his offense. Indeed this educated man apparently had no realization of the nature of the offense until his counsel pointed it out to him. He had written, he testified,
"* * * from an overfoaming frustration." "Whereas an officer shoots from the hip, I shoot from my typewriter and usually when it is out of the typewriter, it is out of my system."
His counsel stipulated to the falsity of the letter insofar as it reflected on the magistrate.
We find Gussman guilty and direct that he be brought before the court on March 21, 1955 for sentencing. N.J.S. 2A:10-3; R.R. 1:5-2; Zimmerman v. Zimmerman, 12 N.J. Super. 61, 69 (App. Div. 1950).