95 N.J. Super. 426 (1967)
231 A.2d 394
ELIZABETH T. McALLISTER, PLAINTIFF-RESPONDENT,
v.
EDWARD W. McALLISTER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 8, 1967.
Decided June 15, 1967.
*429 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Edward W. McAllister, appellant, argued pro se.
Mr. John W. Hayden, Jr., Deputy Attorney General, argued the cause for the State (Mr. Arthur J. Sills, Attorney General of the State of New Jersey, attorney).
PER CURIAM.
Defendant Edward W. McAllister was found guilty of criminal contempt of court for violation of an order made by Judge Consodine in the Chancery Division on January 20, 1966. He was sentenced for a term of 12 months in the Essex County Penitentiary  one month in custody and the balance on probation. In addition to the ordinary *430 terms of probation, the court imposed three further conditions, hereinafter more particularly noted. Defendant appeals from the judgment of conviction of criminal contempt. We stayed the judgment pending appeal.
The order of January 20, 1966 was entered by the trial court on its own motion for the reasons expressed in the preamble thereof. As the court noted therein, defendant had burdened the court with unsought correspondence, the reading of which was time-consuming to the detriment of the rights of other litigants and to the orderly calendar of the court, and the content of which was irrelevant to the issue then presently on hearing before the court and amounted to attempts to prejudice the mind of the court by statements, conclusions and alleged facts. The then most recent correspondence of December 12 and 23, 1965 and January 10, 1966 was attached to and made part of the order. The court had warned defendant both on the record and by letter to cease and desist from this type of correspondence but, subsequent to a letter written by the court on January 4, 1966, defendant sent a communication dated January 10, 1966  22 large-sized pages in length to which seven exhibits were annexed. Only a negligible part of this massive correspondence was in any way related to the issue of visitation rights then before the court.
In this same preamble to the order of January 20, 1966 Judge Consodine further noted that defendant's communications were generally repetitious and "in great portion scurrilous, scandalous, shocking, outrageous, shameful, malicious, slanderous and defamatory." This irrelevant and grossly scurrilous correspondence had continued despite the fact that prior similar correspondence had been stricken from the file by order of September 24, 1965.
Based upon the preamble recitals, the court on January 20, 1966 ordered that:
"* * * Edward W. McAllister, defendant here and appearing pro se herein, cease and desist from correspondence on any phase of the matter before this Court  at this time his visitation rights with the *431 child of the marriage to plaintiff  except in answer to correspondence from the Court and requests of the Court for legal or factual briefs in which instances his correspondence thereto will be in answer to the question raised by the Court or in the latter regard on the issue before the Court; and it is further
ORDERED that no other communications, exhibits, newspaper clippings or anything else shall be mailed, sent, delivered or forwarded by Edward W. McAllister to this Court; and it is further
ORDERED that in all phases of the matters before the Court in this case, now and in the future, the defendant will proceed by Notice of Motion or Order to Show Cause in accordance with the Rules Governing the New Jersey Courts."
On January 26, 1966 defendant was served with a copy of this order.
Plaintiff had obtained a final judgment of divorce against defendant on April 17, 1961. Several attempts by defendant to reverse that judgment had failed, so that its validity was beyond legal attack at the time in issue. The only proper question before the court at the time of the January 20, 1966 order was defendant's claim to greater visitation rights with the child of the marriage. Hearings on that score had been almost completed on March 15, 1966, when defendant filed a "Notice of Motion" for a change of venue, alleging an inability to get a fair hearing in Essex County where the matter was then pending. This motion was patently out of time under the rules. R.R. 4:3-3. Defendant relied upon R.R. 1:27A which deals with "Relaxation of the Rules" as a basis for his belated motion. But the lateness of the motion and the imminency of the disposition of the matter under consideration are manifested by the fact that this phase was finally argued on March 17, 1966, only two days after the Notice of Motion, and the matter was decided in a lengthy opinion by Judge Consodine on March 25, 1966. The order concerning visitation was dated and filed on March 28, 1966.
The gravamen of the charge of criminal contempt is that defendant used the form of a notice of motion, with the papers annexed thereto, to do what he had been forbidden to do by the order of January 20, 1966. To his notice of motion *432 of March 15, 1966 defendant had annexed a supporting affidavit and further annexed the old repetitive, irrelevant, time-consuming, scurrilous and defamatory correspondence and so-called exhibits which he had been repeatedly told not to employ, as formalized in the order of January 20, 1966.
On March 28, 1966, pursuant to R.R. 4:87-1, Judge Consodine certified that defendant's mailing to him of the notice of motion dated March 15, 1966 by special delivery with the intention that the same be delivered to him, and his receipt thereof on March 16, 1966 when hearings were pending and incomplete on the matter before the court and prior to disposition thereof, was a willful violation of the aforesaid order of January 20, 1966, "and in the actual presence of this court." The certification referred to the following papers attached to the notice of motion:
"Supporting Affidavit, four pages in length; a copy of a letter dated August 23, 1963 from a C.J. Watts to Rokos & Drucker; a copy of a one page letter dated March 1, 1966 to Governor Richard Hughes from a Stanley Sredzinski; a copy of a page of what appears to be newspaper clippings; sheet of nearly two pages entitled Ex-F and having to do with defendant's interpretation of matters before this Court several years ago, and not part of the present proceeding, and said Ex-F continued as Exhibit F for three pages thereafter; four pages of a transcript of certain testimony all of which was available to this Court; two pages of copies of letters from the infant child, Denise, to defendant which were offered and received in evidence; and nine pages of a mimeographed copy of a letter from defendant to Chief Justice Weintraub, dated March 15, 1966, and marked `FOR IMMEDIATE RELEASE TO THE PRESS.'"
By order of March 28, 1966 defendant was directed to appear before Judge Consodine on April 7, 1966 for imposition of a sentence for criminal contempt. A copy of the certification pursuant to R.R. 4:87-1 was attached to this order. Service was made upon defendant of a copy of this order and attached certification.
On April 4, 1966 defendant wrote a letter to Judge Consodine acknowledging that he had been served on April 2 with the order to appear on April 7, stating that he was trying to *433 contact an attorney, and requesting a postponement of the hearing for at least two weeks. He was directed to make a motion in open court in accordance with his letter. He did so and the hearing was postponed until April 27, 1966. He appeared in court on that date with an attorney and, after a hearing at which he and his attorney were given every opportunity to be heard, he was found guilty and sentenced as first noted above. Defendant now prosecutes this appeal pro se.

I
Defendant argues that the order of January 20, 1966 was invalid because there was no basis in fact for the order. He maintains that there is no rule restricting the length of communications to a court, that all litigation and the correspondence relating thereto are burdensome and time-consuming to a court, and there was no clear and unmistakable showing of a knowing attempt by him to prejudice the mind of the court. In sum, his position is that the order of January 20, 1966 violated his rights under the 14th Amendment of the Constitution of the United States.
The trouble with this argument is in defendant's failure to recognize that courts do have a right to protect themselves from being deluged with impertinent, irrelevant, scurrilous, defamatory and vicious correspondence, such as that repeatedly indulged in by him. All one need do is to read the patently offensive correspondence with which defendant bombarded the court before and after he was warned and ordered not to send it, to find justification for the order whose violation gave rise to the judgment of criminal contempt.
Correspondence to the court is intended to be read. The fair inference is that the sender intends to influence the mind of the court by the contents of the correspondence; otherwise, it would be an exercise in futility to send it. If relevant, material and pertinent, there is no basis for judicial complaint merely because the reading is burdensome or time-consuming. But when a party sends to a judge correspondence which he *434 presumably intends the judge to read, whose reading is burdensome and time-consuming not only because of its length but also because of its repetitive, obnoxious, defamatory, grossly scandalous and irrelevant character, and continues to do so repeatedly after such correspondence has been stricken from the files and warning after warning to desist therefrom have gone unheeded, then an order such as that of January 20, 1966 is necessary, appropriate, proper and valid.

II
Defendant's second point is that the trial judge should have disqualified himself from presiding over the contempt hearing. Defendant questions whether the alleged contempt was committed "in the presence of the Court," so as to make summary disposition by the trial court appropriate.
Judge Consodine stated in his certification, pursuant to R.R. 4:87-1, that the willful violation of the order of January 20, 1966 was "in the actual presence of this court." N.J.S. 2A:10-1 provides that any court may punish for contempt in the case of
"a. Misbehavior of any person in the actual presence of the court; * * *."
"Actual presence" does not mean that the contempt must be committed while the judge is presiding in open session in the courtroom. In re Merrill, 88 N.J. Eq. 261, 275 (Prerog. 1917). There it was held that it is a grave contempt of court to communicate with, or to seek in any way to influence a judge, upon the subject-matter of a cause pending before him and undecided, as such conduct is plainly an attempt to improperly influence the due administration of justice.
In State v. Gussman, 34 N.J. Super. 408 (App. Div. 1955), it was held that one who wrote a letter to a judge of the municipal court stating, in effect, that he would not appear on a traffic charge because he would not receive a *435 fair trial and would be the victim of a shake-down, was guilty of contempt in the "actual presence" of the court. We remarked that the right of free speech is not absolute. We have a public interest in maintaining a sufficient respect for the courts. A defendant may not defy the court and hurl gross accusations and insolence under the guise of freedom of speech. Id., at p. 413. For other cases of contempt in the "actual presence" of the court, though the act was not committed in an open session in the courtroom, see Gussman, supra, 34 N.J. Super., at p. 415. The term "in the presence of the court" has always been given a liberal interpretation. In re Caruba, 139 N.J. Eq. 404, 422 (Ch. 1947), affirmed 140 N.J. Eq. 563 (E. & A. 1947); In re Glauberman, 107 N.J. Eq. 384 (E & A. 1930).
Defendant confuses R.R. 4:87-1, which governs a criminal contempt committed in the actual presence of the court, which may be summarily punished by the judge in whose presence it was committed, with R.R. 4:87-2, which governs "every other contempt," in which case the procedure under that rule becomes applicable. The proceeding for contempt herein was under R.R. 4:87-1.
Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954), relied upon by defendant, is factually distinguishable and for that reason inapposite. There, the trial judge was deeply involved in a dispute with the attorney whom he held in contempt. The judge's actions and obvious lack of impartiality were deemed to have so improperly influenced the jury as to require a reversal of the conviction of the attorney's client. Peckham v. United States, (93 U.S. App. D.C. 136, 210 F.2d 693, 702 (1953). Similar facts do not exist in the instant case. So, too, Van Sweringen v. Van Sweringen, 22 N.J. 440 (1956), is inapplicable. There, the contemptuous act reflected upon the integrity of the trial judge. Here, the contumacious conduct lies in the violation of a court order.

*436 III
The third argument advanced by defendant is that Judge Consodine improperly denied his motion on April 27, 1966 for a further adjournment.
At the inception of the hearing on April 27, 1966, defendant's attorney announced upon the call of the case:
"We are ready for the defendant."
After Judge Consodine had spread upon the record the facts and applicable law, defendant was given the opportunity to present evidence in his defense and in extenuation of the certification of criminal contempt and in mitigation of any punishment to be imposed after hearing. Defendant's attorney asked for and was granted a recess to confer with his client. He then stated that the most effective presentation could be made with a further adjournment. He concluded, however, by stating:
"* * * we are prepared to proceed today."
Judge Consodine thereupon clarified the record, stating:
"If what you will say is a motion for a further adjournment, I will deny it for the record."
The matter of an adjournment was not otherwise pressed and defendant was called to testify. He did so at length.
There is no merit in this claim of error. No prejudice was shown. Defendant's attorney assured the court, on the contrary, that he was ready to proceed.

IV
Defendant claims that the evidence was insufficient to establish a contempt of court. He argues that the filing of the notice of motion for a change of venue was the basis of the contempt citation, but the order of January 20, 1966 expressly *437 provided that in all phases of the matters before the court in this case, now and in the future, "the defendant will proceed by Notice of Motion or Order to Show Cause in accordance with the Rules governing the New Jersey Courts." (Italics ours) Defendant's position is that he proceeded by a "notice of motion," as he was permitted to proceed under the January 20 order. Thus, says he: "The motion was squarely within the terms of the order. The motion was in the proper form. It was supported by affidavit, annexed to which were exhibits which cannot be conceived as being anything other than incorporated by reference."
It was not the filing of the "Notice of Motion" by itself which formed the basis for the contempt action. Instead, it was the mailing to the court of the papers attached thereto which Judge Consodine found to be contumacious and in violation of the order of January 20, 1966. By use of the form or guise of a notice of motion, defendant violated the substance of the order. The notice of motion was but a vehicle employed to carry to the court the correspondence which defendant had been warned and ordered not to send. The irrelevancy of his diatribes against judges generally, his letter addressed to the Chief Justice and marked as a press release, as well as the other so-called "exhibits" were repetitions of the burdensome, time-consuming, irrelevant, scurrilous, defamatory and otherwise objectionable correspondence which he had been ordered not to send to the court.
Defendant was well-versed in legal procedures. According to his own statement he has had in excess of 95 hearings, in most of which he has appeared pro se. He knew that a motion for a change of venue must be made under R.R. 4:3-3 "before trial." He showed that awareness when he invoked R.R. 1:27A, the "Relaxation of Rules" provision. He had made, previous to this motion, three other abortive attempts to obtain a change of venue in this very proceeding. It is a fair inference that he knew that relaxation of the rules would not be permitted at such an extremely late stage in these proceedings, on the very eve of disposition of the matter. Yet, he used *438 the spurious formal exterior of a "notice of motion" as a screen to send again to the court the same irrelevant, scandalous and objectionable correspondence  now falsely labelled "exhibits" annexed to his notice of motion  which he had been warned and ordered not to send.
Our review of the record satisfies us that, under the totality of the evidence, the trial court was justified in finding that defendant willfully violated the order of January 20, 1966.

V
Subsequent to defendant's filing his notice of appeal, Judge Consodine filed with the clerk of the Superior Court "Further Findings of Fact and Conclusions of Law" to be included in the case on appeal. Defendant maintains that this document should be stricken from the record because it contains neither findings of fact nor conclusions of law and relates to occurrences subsequent to the allegedly contumacious conduct of March 15, 1966. He argues that this evidence has no relevancy and he had no opportunity to be heard with respect to these matters.
The further findings of fact filed by Judge Consodine consisted of a copy of his opinion of March 25, 1966 with reference to the question of visitation by defendant with the child of the marriage, and a copy of the order entered thereon under date of March 28, 1966. These papers were relevant and supportive of the uncontradicted fact that the hearing on visitation and disposition of the matter had not been completed when defendant mailed his "motion" papers on March 15, 1966.
The further findings of fact included copies of correspondence received by Judge Consodine from defendant subsequent to the service on January 26, 1966 of a copy of the order of January 20, 1966, viz., copies of letters dated March 22, 1966, March 29, 1966 and April 4, 1966, to demonstrate as a fact that defendant had a clear idea of the type of correspondence that should be addressed to the trial court in the *439 light of the order of January 20, 1966. The trial court evidently relied upon this evidence in concluding as a fact that this defendant knew that the communication of March 15, 1966 was a violation of the order of January 20, 1966.
In his further conclusions of law the trial judge stated that the conduct of defendant would be reprehensible in an attorney and would subject him to disciplinary action, and that defendant is not entitled to any greater rights than his attorney would have merely because he appeared pro se. Judge Consodine stated further that he had inadvertently not cited a treatise on contempt, which he had used in this matter in his remarks from the bench, and then furnished the name of the treatise, to wit:
"The History of Contempt  The Form of Trial and the Mode of Punishment, by Sir John C. Fox, late Senior Master of the Supreme Court Chancery Division, Oxford University Press, 1927."
We previously denied defendant's motion to strike these "Further Findings." We find no prejudicial error in the record's being thus supplemented.

VI
Defendant's final attack upon the validity of the judgment of contempt is his claim that the contempt power of the court was improvidently exercised in violation of his rights under the 14th Amendment of the Constitution of the United States.
In order for a statement to constitute a criminal contempt of court, the statement must tend to intimidate, influence, impede, embarrass or obstruct courts in the administration of justice in a matter pending. In re Bozorth, 38 N.J. Super. 184, 189 (Ch. Div. 1955). That case dealt with a statement criticizing the decision of a judge after the *440 matter had been finally disposed of. Here, the contumacious act was as to a matter still pending.
Admittedly, the court's power to initiate a prosecution for contempt should be used sparingly. New Jersey Dept. of Health v. Roselle, 34 N.J. 331, 343 (1961). At the same time the power must be exercised fearlessly when needed to uphold the dignity of the court and to encourage respect for its orders. The summary contempt power is "essential to the court's protection in discharging its functions." State v. Dias, 76 N.J. Super. 337, 340 (App. Div. 1962).
Defendant would have us find an abuse of the contempt power in the trial court's imposing three conditions to the probation beyond those customarily imposed. The first requires him to remove from his automobile a coffin display and grossly defamatory placards impugning the dignity and integrity of the New Jersey courts. The second imposes a similar restraint as to any other vehicle similarly used with his agreement, consent, permission or approval. The third prohibits the dissemination during the period of incarceration and probation by him or by others with his consent of written or radio publications referring to this litigation, except that this condition does not apply to pleadings in accordance with the rules of any court of this State or of the United States.
We do not find these added conditions unreasonable in the light of all of the circumstances of this case. Defendant's bizarre coffin-like display was deemed personally obnoxious even by his own daughter who suffered humiliation in her daily associations by reason thereof. The order of March 28, 1966, fixing defendant's visitation rights, was conditioned upon defendant's discontinuance of this public display. The second condition simply precludes defendant from circumventing the provision by using others to accomplish the result for him. The restraint upon publication is to insure good behavior on defendant's part during the probation period if he would avoid incarceration during 11 of the 12 months of the term. The choice lies with defendant.
*441 Finding no sound basis for a reversal in any of the points argued by defendant, the judgment of conviction is affirmed. Upon the coming down of the mandate of this court, the stay heretofore granted will be deemed to be dissolved. The matter will be remanded to the Chancery Division for execution of the judgment of conviction.