35 A.3d 703

MARGARET DUCEY, PLAINTIFF–RESPONDENT/CROSS–
APPELLANT, v. STEPHEN DUCEY, DEFENDANT–
APPELLANT/CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 16, 2011—Decided February 2, 2012.

Before Judges LIHOTZ, WAUGH and ST. JOHN.

*Francis W. Donahue* argued the cause for appellant/cross-respondent (*Donahue, Hagan, Klein, Newsome, O'Donnell & Weisberg, P.C.*, attorneys; *Mr. Donahue*, of counsel and on the briefs; *Melissa M. Ruvolo*, on the briefs).

*James P. Yudes* argued the cause for respondent/cross-appellant (*James P. Yudes, PC*, attorneys; *Kevin M. Mazza*, on the briefs).

The opinion of the court was delivered by

LIHOTZ, J.A.D.

In this complex matrimonial matter, the parties' cross-appeals challenge various provisions contained in an amended final judgment of divorce (JOD) that ordered the payment of support and the equitable distribution of assets. Without addressing the parties' arguments on the merits of these issues, we are constrained to reverse, as we reject the procedure employed by the trial judge, who, after presiding over a fourteen-day trial, entered a final JOD advising the court's "underlying opinion will be sent shortly." Several months later, when the trial judge released the reasoning for her prior decision, the substantive provisions diverged significantly from those in the JOD and counsel was ordered to prepare an amended JOD. Although the trial judge included factual findings for many of the conclusions set forth in the amended JOD, no explanation was given for the wholesale alteration of the initially ordered provisions in the JOD. We reject any suggestion that the trial judge's actions in this regard fall within her reasoned discretion, as discussed in *Lombardi v. Masso*, 207 *N.J.* 517, 25 *A.*3d 1080 (2011). Accordingly we reverse and remand for a new trial before a different Family Part judge.

The parties were married on June 19, 1993, and have four minor children. Plaintiff Margaret Ducey, formerly a teacher, was a full-time homemaker. Defendant Stephen Ducey worked as an orthopedic surgeon, and owned a forty-nine percent interest in a medical practice. The parties separated in May 2006.

Plaintiff filed her complaint for divorce on June 12, 2006, which was met with defendant's counterclaim for divorce. Plaintiff moved for pendente lite relief. The court ordered defendant to pay all expenses necessary to maintain the former marital home; to continue all health and dental insurance for plaintiff and the children at his expense; to satisfy plaintiff's monthly automobile expenses, including insurance and gasoline; and to provide plaintiff and the children with monthly unallocated support, subject to her obligation to account for the use of the funds.

The parties' two significant assets were the marital home and defendant's interest in his medical partnership. The order included provisions to restrain the parties' alienation of assets, delineate release of discovery, and appoint a joint forensic accounting expert to discern defendant's cash flow and value his partnership interest in the medical practice. In addition, the court ordered a joint real estate appraiser be retained to provide an expert valuation of the marital home. Thereafter, motions were filed resulting in orders allowing the release of funds enabling the parties to retain and provide payment to individual forensic experts along with other relief in preparation for trial. Discovery ended, and trial commenced on September 8, 2008, eventually concluding on October 8, 2008.[1]

During trial, the three forensic experts testified regarding their opinion of the value of defendant's partnership interest. The parties also testified and introduced numerous documents into evidence.

On May 13, 2009, seven months following trial, the Family Part judge issued a JOD. The transmittal letter accompanying the JOD simply stated:

Dear Counsel:

Enclosed herewith is the Judgment of Divorce in the above referenced case. The underlying opinion will be sent shortly. Upon receipt of same, parties are to prepare a more detailed Amended Judgment of Divorce.

The JOD granted each party's request for divorce and entered provisions regarding custody, parenting time, limited duration alimony, child support, and equitable distribution of assets. Notably, the JOD appointed a parenting coordinator to assist the parties in parenting the children, provided for the children's insurance, allocated the payment of uninsured medical expenses, addressed payment of the children's future college costs, and required defendant to maintain life insurance. Detailed terms and conditions for child support and alimony were included. Regard-

---

[1] Various judges handled the pre-trial motions and entered the orders. The trial judge had not handled the matter until trial.

ing the distribution of the parties' assets, the JOD fixed the value of defendant's medical practice and ordered payment to plaintiff of fifty percent of that interest; fixed the value and distribution of the former marital home; ordered defendant to pay the court appointed expert; and awarded plaintiff counsel and expert fees. However, the court reserved the amount of the attorney fee award pending counsel's submission of an affidavit of services rendered.

The record before us does not reveal any motion practice initiated following the filing of the JOD. We note plaintiff corresponded with the court, suggesting she considered the judgment interlocutory and invited the court to reconsider the value assigned to defendant's medical practice. Defendant opposed the request in reply correspondence.[2]

Three months later, on August 14, 2009, the trial judge rendered a thirty-two page written opinion, in which she addressed each of the issues previously finalized in the JOD. Unfortunately, the opinion did not support the conclusions reached in the JOD and most of the provisions of the two documents did not match. For example, the weekly child support award was increased by 33.33%, the amount of alimony was increased by 35% and the term lengthened by three years, and the value of defendant's medical practice, from which plaintiff was awarded a 50% interest, was increased more than 142%. The opinion made no mention of the May 13, 2009 JOD or why the court's factual findings and conclusions differed from the initial judgment. Counsel was ordered to prepare an amended JOD, which was filed on September 29, 2009.

The parties have no disagreement with the court's conclusions to dissolve the marriage and provide for the custody of the children, and we note these terms are identical in the JOD and the

---

[2] We have recognized that "[c]orrespondence to the court is intended to be read[,]" as "[t]he fair inference is that the sender intends to influence the mind of the court by the contents of the correspondence[.]" *McAllister v. McAllister,* 95 *N.J.Super.* 426, 433, 231 *A.2d* 394 (App.Div.1967). However, the use of correspondence must not be a substitute for motions when presenting a party's request for specific relief. *See R.* 1:6–2; *R.* 5:5–4.

amended JOD. Rather, the parties' respective arguments on appeal attack several financial provisions of the amended JOD, primarily arguing the trial court abused its discretion because its findings and conclusions were not sufficiently substantiated by the facts in the record. Additionally, defendant maintains the trial court failed to comply with its factfinding obligation by entering the JOD unaccompanied by factual findings and later rendering an opinion which contradicted the JOD without explanation.

We focus on this last issue and conclude the trial court deviated from its factfinding obligation, as set forth in *Rule* 1:7–4(a), by issuing an opinion three months following the entry of the JOD. More important, we vacate the financial provisions in the amended JOD because the findings and conclusions bear minimal resemblance to the conclusions of the JOD, without an explanation for the divergence.

In matrimonial matters, judges should enter final judgments accompanied by the underlying factual findings and reasoning. We have repeatedly reminded trial courts of their factfinding obligation. Factfinding "is fundamental to the fairness of the proceedings and serves as a necessary predicate to meaningful review[.]" *R.M. v. Supreme Court of N.J.*, 190 *N.J.* 1, 12, 918 *A.*2d 7 (2007). A trial court must make adequate findings of fact "so that the parties and the appellate court may be informed of the rationale underlying his [or her] conclusion[s]." *Esposito v. Esposito*, 158 *N.J.Super.* 285, 291, 385 *A.*2d 1266 (App.Div.1978).

We admonish trial courts not to engage in the practice of entering final judgments with the mere statement that "[t]he underlying opinion will be sent shortly." The practice deviates from principles of fundamental due process at the expense of litigants, who must comply as ordered without benefit of the basis of the trial court's determinations. Such a practice perverts a trial judge's primary obligation to make factual findings to support all legal conclusions. *R.* 1:7–4 (mandating a trial court to find the

facts and state its conclusions of law when entering every order or judgment).

We are not convinced this unacceptable procedure is widespread. Nevertheless, we refer the matter to the Conference of Family Presiding Judges for review and implementation of any necessary policy provisions or training.

We turn to plaintiff's assertion that any defects in the JOD were cured by the release of the judge's opinion supported by factual findings and reasons. Plaintiff maintains that because the JOD did not finalize the award of counsel fees, it was merely an interlocutory order, which could always be changed, especially to correct an injustice. *See Lombardi, supra,* 207 *N.J.* at 534, 25 *A.*3d 1080 ("It is well established that 'the trial court has the inherent power to be exercised in its sound discretion, to review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment.' " (quoting *Johnson v. Cyklop Strapping Corp.,* 220 *N.J.Super.* 250, 257, 531 *A.*2d 1078 (App.Div. 1987), *certif. denied,* 110 *N.J.* 196, 540 *A.*2d 189 (1988))). We are not persuaded and reject this argument.

In *Lombardi,* the trial court granted summary judgment to all but two defendants and denied plaintiff's subsequent motion for reconsideration. *Id.* at 528, 25 *A.*3d 1080. That same day, the court commenced a proof hearing against one of the two remaining defendants. *Ibid.* The hearing spanned several days, giving the court significant factual information beyond what was included in the summary judgment pleadings. *Id.* at 529, 25 *A.*3d 1080. At the conclusion of the hearing, the trial judge wrote a letter to all parties explaining:

> The dynamics of this case appear[ ] to be far more complicated than the various briefs, certification and perhaps my prior decisions may demonstrate. Thus, in the interest of justice, a second argument will be very important.
>
> Fairness dictates that all of the parties have an opportunity to review the proof hearing proceeding and to make any additional submissions[, as] necessary.
> [*Ibid.* (first alteration in original).]

On its own motion, the court notified all parties, including those defendants previously dismissed from the case, that it would

revisit summary judgment. *Ibid.* The parties were provided with all documents presented at the proof hearing along with transcripts and allowed two months to prepare for a new hearing. *Ibid.*

During this rehearing, the trial judge explained he, not the plaintiff, initiated the review because he realized there were several contradictions in the summary judgment record that he had overlooked. *Id.* at 530, 25 *A.*3d 1080. In the interest of fairness, the trial judge felt compelled to reconsider all evidence, including facts presented during the proof hearing. *Ibid.* He then issued a written opinion outlining the material disputes of fact that existed, explaining why summary judgment had been improvidently granted. *Ibid.*

 This court affirmed and the Supreme Court, in its review, explained the power of a trial court to reconsider interlocutory orders is "rooted in common law" and "broadly codified in *Rule* 4:42–2[.]" [3] *Id.* at 534, 25 *A.*3d 1080. The Court also noted *Rule* 1:7–4(b) required motions requesting reconsideration of interlocutory orders be governed by *Rule* 4:42–2, stating "[t]hat *Rule*, like the jurisprudence on which it is based, sets forth no restrictions on the exercise of the power to revise an interlocutory order." *Ibid.* The "special power afforded to judges over their interlocutory orders derives from the fact that cases continue to develop after orders have been entered and that judges likewise continue to think about them." *Id.* at 536, 25 *A.*3d 1080. Finally, noting the rule was expansive, the Court cautioned the trial court's "power to reconsider an interlocutory order should be exercised 'only for good cause shown and in the service of the ultimate goal of substantial justice.'" *Ibid.* (quoting *Johnson, supra,* 220 *N.J.Super.* at 263–64, 531 *A.*2d 1078).

---

[3] *Rule* 4:42–2 provides:

any order ... which adjudicates fewer than all the claims as to all the parties shall not terminate the action as to any of the claims, and it shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice.

█ In this matter, the procedure employed by the trial judge is markedly different from that followed in *Lombardi*. Unlike *Lombardi*, this was not a decision grounded on affidavits and pleadings, later shown by subsequent testimony to be in conflict. Here, the parties presented all testimonial, expert, and documentary evidence through direct and cross-examination in the course of a fourteen-day trial. No further proceedings were needed or contemplated to reach the final determinations, save for counsel's substantiation of services justifying plaintiff's fee award. Consequently, on May 13, 2009, the trial court entered a *final* judgment on virtually all issues.[4]

Although we recognize the case was not technically concluded until the attorney fee award was actually set, *see Rule* 2:2–3 (stating appeals may be filed only from final judgments), nevertheless, such a minor outstanding issue would not serve as a basis to abrogate nearly all of the substantive conclusions stated in the JOD, unless the trial judge explained the errors causing the previously entered erroneous result. *See Fusco v. Bd. of Educ. of Newark,* 349 *N.J.Super.* 455, 462, 793 *A.*2d 856 (App.Div.) (explaining that reconsideration is appropriate only where a court's decision was palpably incorrect or the judge obviously failed to consider competent evidence), *certif. denied,* 174 *N.J.* 544, 810 *A.*2d 64 (2002).

Here, nothing suggests the trial judge made mistakes when rendering the JOD. For example, had the valuation of defendant's partnership interest calculated in the trial judge's opinion been double the figure listed "as defendant's share" in the JOD, one might reasonably understand the amount in the JOD was meant as defendant's equitable distribution interest rather than the total value subject to equitable distribution. Our examination of the respective financial provisions reveals no rational correlation be-

---

[4] We remind trial courts that any award of attorney's fees pursuant to *Rule* 5:3–5(c) is subject to the provisions of *Rule* 4:42–9(d), which requires an allowance for fees to be "included in the judgment or order stating the determination" and not provided as a separate order.

tween the conflicting determinations and conclusions found in the JOD and the amended JOD. Accordingly, the rewriting of the terms of the JOD after they had been in place for three months is arbitrary at best. Based on this record it is impossible to reconcile the inconsistencies in the financial terms of the JOD and the amended JOD.

We reject plaintiff's suggestion that the amended JOD must be enforced notwithstanding the fact that its terms altered the JOD because it was supported by the trial judge's opinion. No matter the level of detail of the findings in the trial judge's written opinion, the absence of a full explanation of the perceived mistakes in the JOD warranting correction in the amended JOD, without notice or an opportunity to be heard, requires us to vacate the financial terms of the amended JOD. *See Lombardi, supra,* 207 *N.J.* at 537, 25 *A.*3d 1080 ("Procedurally, where a judge is inclined to revisit a prior interlocutory order, what is critical is that he [or she] provide the parties a fair opportunity to be heard on the subject.").

■ We also cannot abide defendant's suggestion to permit the terms of the JOD to stand because the JOD is unsupported by factual findings. Generally, an unsupported order or judgment is remanded for entry of the omitted findings. *Grow Co. v. Chokshi,* 403 *N.J.Super.* 443, 477, 959 *A.*2d 252 (App.Div.2008). However, the trial judge's subsequent actions here—issuing findings unrelated to the conclusions in the JOD—make it impossible to simply remand for supplementation. Consequently, the terms of the JOD must also be vacated and the matter must be reassigned to a new Family Part judge for retrial on all collateral financial issues.

We note the trial court's conclusions relating to the dissolution of the marriage and the grant of custody remain unaltered. Retrial is limited to the financial issues, including child support, alimony, the equitable distribution of assets, and award of fees.[5]

---

[5] We note *Rule* 5:7–8 prohibits bifurcation of issues in dissolution trials, except "in extraordinary circumstances." Here, the trial court's determination of these two issues has not been challenged and therefore need not be disturbed.

On remand, the parties are free to stipulate any other terms they decide are not in dispute.

We offer a final observation resulting from our review of the provisions contained in the JOD and the trial judge's transmittal letter accompanying her opinion ordering preparation of the amended JOD. The JOD ordered "that counsel ... prepare an Amended Judgment of Divorce that sets forth *the standard terms* for termination of alimony[.]" (Emphasis added). Also, the court's letter stated, "I ask that counsel prepare an Amended Judgment of Divorce incorporating the attached opinion as well as including *the standard language* regarding emancipation, cohabitation, etc." (Emphasis added). We are unaware of any authority that defines "standard language" for these issues. While we recognize *N.J.S.A.* 2A:34-23(b) includes factors relevant to the termination of alimony, and that proof of cohabitation generally permits review of the continued necessity of an alimony award, *Boardman v. Boardman,* 314 *N.J.Super.* 340, 347, 714 *A.*2d 981 (App.Div.1998), authorities discussing these issues include results as varied as the facts of the individual cases. Similarly, child support may end upon a child's death, marriage, or enlistment in the armed services, but whether a child is emancipated is a fact sensitive question, necessitating review of the unique circumstances existing when the request is made. *See Filippone v. Lee,* 304 *N.J.Super.* 301, 308, 700 *A.*2d 384 (App.Div.1997).

When trying a matrimonial matter, absent a stipulation from the parties, the trial judge must decide all collateral issues, including the incidental details associated with each issue. It is important that an opinion after trial terminate litigation, rather than leave open the possibility of further conflict necessitated by an incomplete decision.

Reversed, remanded and reassigned for a new trial.