**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2979-16T4
                  A-3659-16T4

EDIE BRITMAN,

      Plaintiff-Appellant,

v.

FRANK SAURO,

      Defendant-Respondent,

and

BUDD LARNER, PC,

      Defendant/Intervenor-
      Respondent.

_____

EDIE BRITMAN,

      Plaintiff-Respondent,

v.

FRANK SAURO,

      Defendant-Appellant,

and

BUDD LARNER, PC,

       Defendant/Intervenor-
       Respondent.

_____

Argued (A-2979-16) and Submitted (A-3659-16)
September 20, 2018 – Decided February 1, 2019

Before Judges Fuentes, Accurso and Vernoia.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Hunterdon County,
Docket No. FM-10-0129-04.

Edie Britman, appellant, argued the cause pro se (in A-
2979-16) and respondent pro se (in A-3659-16).

Frank Sauro, respondent, pro se (in A-2979-16) and
appellant pro se (in A-3659-16).

Thomas D. Baldwin argued the cause for pro se
intervenor-respondent (in A-2979-16) and Budd
Larner, PC, intervenor-respondent pro se (in A-3659-
16) (Thomas D. Baldwin, on the brief).

PER CURIAM

     Plaintiff Edie Britman and defendant Frank Sauro were once married. They had three children, two boys and a girl, who are now adults. On January 19, 2010, the Family Part judge who tried this case entered an Amended Judgment of Divorce that dissolved the marriage and sua sponte established the

Sauro Children College Trust Account (the Trust), "for the children's college education." The judge placed $200,000 from the marital estate into the Trust and initially ordered that $19,000 be paid to plaintiff to cover the cost of the oldest boy's college education, and $18,593 be paid to defendant to cover the cost of the girl's college education. The judge also included the following directions for how the funds in the Trust were to be disbursed from this point forward:

> Any application for funds in the future should be made by the parties on behalf of the children in accordance with the standards set forth in Newburgh v. Arrigo, 88 N.J. 529 (1982). The balance of the monies shall be held in trust in an interest bearing account by a trustee to be agreed upon by the parties for the college and graduate school costs of the children. If the monies are not expended for the children's education by the time [the youngest child] reaches the age of twenty-two (22), and if he has no plans to attend graduate school, either of the parties or the law firms with charging liens may petition the [c]ourt to have the remaining monies distributed equally to the parties as equitable distribution which would be subject to the attorneys' liens.

The law firm of Budd Larner, PC (Budd Larner) was one of three law firms that represented plaintiff in the matrimonial case. Budd Larner appealed the trial court's decision to establish the Trust from the marital estate, "arguing that the manner in which the court allocated the parties' marital assets negatively

3

affected the firm's attorney charging lien pursuant to N.J.S.A. 2A:13-5." Sauro v. Sauro, 425 N.J. Super. 555, 560 (App. Div. 2012). This court affirmed the Family Part judge's laudable proactive approach.

> We conclude that the trial judge's decision to establish an education trust fund to cover the children's cost of attending college was properly supported by the record, well within the court's authority, and in keeping with the court's obligation to act in the best interest of the children. Budd Larner's contractual rights, as reflected in the retainer agreement with plaintiff, do not abrogate or limit the Family Part's overriding obligation to act in the best interest of the children in this case.
>
> [Id. at 572.]

Since the entering of the January 19, 2010 Amended Judgment of Divorce, the parties have sought and received approximately $185,000 from the Trust to pay for the education expenses of their children. However, despite the clear language this court used in Sauro, each time the parties petitioned the court to access the Trust to cover the cost of their children's educational expenses, the judge assigned to the matter allowed Budd Larner to challenge the requested disbursement. Budd Larner successfully argued to the judge that the protocol established by the trial court's order for the disbursement of the Trust funds gave it standing to participate in these proceedings.

A-2979-16T4

Beginning on August 10, 2015 and ending on February 1, 2016, the judge conducted an evidentiary hearing over four non-sequential days to determine whether the parties' request satisfied the <u>Newburgh</u> standards. The judge found that between 2012 and 2015, the parties had the ability to partially contribute to their children's college education. The judge ordered the parties to replenish the Trust in the amount of $60,000, which represented the educational expenses they could have paid during those four years. The judge also ordered that the remaining Trust funds be disbursed equally to the parties as equitable distribution, subject to attorney charging liens.

In an order dated June 30, 2016, the Family Part judge found that pursuant to <u>Newburgh</u> factors, "the [p]laintiff and [d]efendant presently have, and previously have had, an ability to contribute toward the college education expenses of their children, and shall replenish The Sauro Children College Trust Account for disbursements made from the Account during the four year period of 2012 through 2015." The judge held plaintiff was responsible to pay $20,000 and defendant $40,000. The judge also held that no further disbursements were required because the parties' youngest child had graduated from college and did not plan to attend graduate school.

5 <span style="float:right">A-2979-16T4</span>

On June 9, 2016, defendant filed a Notice of Appeal challenging the Family Part's June 30, 2016 order.[1] The Appellate Division Clerk administratively dismissed the appeal on October 4, 2016 for failure to prosecute. By order dated November 14, 2016, this court denied defendant's motion to reinstate the appeal. According to Budd Larner, on December 7, 2016, the trustee disbursed the balance of the funds in the Trust in accordance with the June 30, 2016 order.

On February 8, 2017, 223 days after the final June 30, 2016 order, the Family Part judge sua sponte issued an amended order with an attached statement of reasons that replaced the June 30, 2016 order. The amended order contained almost identical language as the original order. The only difference related to the parties' financial status. The judge found that the $60,000 the parties were required to pay to replenish the Trust represented 7.25% of their combined incomes of approximately $827,000 during 2012 through 2015. The February 8, 2017 amended order also adjusted the deadlines by which the parties were required to make these payments.

---

[1] Although defendant filed the Notice of Appeal before the Family Part entered the June 30, 2016 order, we accepted it nunc pro tunc.

A-2979-16T4

Both plaintiff and defendant now appeal from the February 8, 2017 order. Although these appeals were docketed separately, in an order dated August 10, 2017, this court directed the Clerk's Office to schedule the appeals "back-to-back." We now consolidate the appeals in this opinion because both parties have advanced the same legal position. The parties argue the approach employed by the Family Part is inconsistent with and in violation of the Family Part's January 19, 2010 Amended Judgment of Divorce and this court's decision in Sauro. Budd Larner argues the appeal should be dismissed because the Family Part's February 8, 2017 sua sponte order was improvidently entered without notice.

After carefully reviewing the record before us, we exercise our discretionary authority pursuant to Rule 2:8-3(b) and summarily reverse the Family Part's February 8, 2017 order. Our decision in Sauro makes clear that in establishing the Trust, the Family Part "placed higher priority upon the children's educational well-being over the right of counsel to enforce an attorney charging lien." 425 N.J. Super. at 573-74. The $200,000 placed in the Trust was to be used exclusively to cover the educational expenses of the parties' children.

The Family Part's January 19, 2010 order that established the Trust did not impose upon the parties the obligation to replenish the funds in the Trust

A-2979-16T4

based on a change in their financial status. Budd Larner did not have standing to question the legitimacy of the parties' requests for disbursement of funds from the Trust nor to require the court to conduct an evidentiary <u>Newburgh</u> hearing to approve the disbursement. As we made clear in our decision affirming the Family Part's January 19, 2010 order:

> The Family Part's jurisdiction over this matter must be guided exclusively by the best interest of the children. The court's power must be used to moderate the financial disruption caused by the dissolution of the marital estate, and to the extent possible, restore and promote the stability necessary for the parties to make sound parenting decisions. The court is also obligated to protect the children of the dissolving union, who, at times, become embroiled in their parents' antagonism, and fall prey to their misguided passions.
>
> When the adults in the controversy are unable or unwilling to act in the best interests of their own children, the court must be free to act, swiftly, decisively, and unfettered by extraneous considerations. The establishment of a judicially crafted educational trust fund is but one of a myriad of creative remedies in the court's equitable arsenal. <u>An attorney charging lien, or any other of the possible numerous claims that can be asserted against a family's limited financial resources, cannot undermine the court's parens patriae responsibility. The monies supporting the education trust are restricted to cover the cost of the children's college education, and would thus not be available to plaintiff at the time of final disposition</u>.
>
> [<u>Id.</u> at 576-77 (emphasis added).]

The Family Part's role in this case under its <u>parens</u> <u>patriae</u> responsibility was to ensure the children would have the funds necessary to complete their higher education. The lien created by the attorney's lien statute "attaches only to funds available to the parties at the time of the final disposition of the case." <u>Sauro</u>, 425 N.J. Super. at 577. The final disposition of this case occurred on January 19, 2010. If Budd Larner has a judgment against plaintiff for the counsel fees she incurred in connection with the legal services it provided in this matrimonial case, it has the right to avail itself of the remedies for collection of debts provided under <u>Rule</u> 4:59-1. Therefore, Budd Larner is ordered to return any monies received from the Trust.

Finally, we are compelled to briefly address the Family Part judge's sua sponte decision to modify the June 30, 2016 final order, 223 days after it was entered and subject to appeal as a final judgment. The Supreme Court has recognized that "the trial court has the inherent power to be exercised in its sound discretion, to review, revise, reconsider and modify its <u>interlocutory</u> <u>orders</u> at any time prior to the entry of final judgment." <u>Lombardi v. Masso</u>, 207 N.J. 517, 534 (2011) (emphasis added) (quoting <u>Johnson v. Cyklop Strapping Corp.</u>, 220 N.J. Super. 250, 257 (App. Div. 1987)); <u>see</u> <u>also</u> <u>R.</u> 4:42-2. Here, the June 30, 2016 decision was not interlocutory and the judge did not

provide the parties with notice and an opportunity to be heard before issuing the modified February 8, 2017 decision. See Ducey v. Ducey, 424 N.J. Super. 68, 78 (App. Div. 2012) (reversing the trial court in part for the "absence of a full explanation of the perceived mistakes in the [final order of divorce] warranting correction in the amended [final order of divorce], without notice or an opportunity to be heard[.]").

Notwithstanding these material deviations from long-established procedural requirements, these errors are legally inconsequential in light of our determination that Budd Larner did not have a role to play in these proceedings.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION