**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3436-18T2

B.E.D.,[1]

    Plaintiff-Respondent,

v.

D.S.W.,

    Defendant-Appellant.

_____

Argued telephonically June 30, 2020 –
Decided July 20, 2020

Before Judges Vernoia and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-2013-19.

Scott T. Schweiger argued the cause for appellant.

David Warren Sufrin argued the cause for respondent (Zucker Steinberg & Wixted PA, attorneys; David Warren Sufrin, of counsel and on the brief).

PER CURIAM

_____

[1] We use initials for the parties in accordance with Rule 1:38-3(d)(10).

Defendant D.W. appeals from a final restraining order (FRO) entered against him pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35 (PDVA). On appeal, defendant raises the following points for our consideration:

I. THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT COMMITTED THE PREDICATE ACT OF HARASSMENT UNDER N.J.S.A. 2C:33-4(b).

II. EVEN IF THE PREDICATE ACT OF HARASSMENT WAS ESTABLISHED, [THE COURT] ERRED IN [ITS] FINDING THAT RESTRAINTS WERE NECESSARY TO PROTECT THE VICTIM FROM IMMEDIATE DANGER OR TO PREVENT FURTHER ABUSE.

III. THE TRIAL COURT ERRED BY FAILING TO MAKE SUFFICIENT FINDINGS OF FACT AND DETERMINATIONS OF CREDIBILITY REGARDING PRINCIP[AL] ISSUES IN DISPUTE.

IV. THE COURT IMPROPERLY RELIED ON TESTIMONY AND EVIDENCE PRESENTED BY PLAINTIFF WHICH WAS THE SUBJECT OF A PRIOR TEMPORARY RESTRAINING ORDER WHICH WAS DISMISSED FOLLOWING AN ADJUDICATION ON THE MERITS. [(Not raised below)].

We agree with the arguments raised in defendant's point III and, as such, cannot determine on the record before us the merits of the contentions raised in points I and II. Accordingly, we vacate the FRO, reinstate the amended

temporary restraining order (ATRO), and remand for the trial court to make further findings of fact and conclusions of law. Because defendant failed to object at trial to the admission of evidence in support of plaintiff's application for a prior temporary restraining order (TRO) against him, we discern no need to consider the arguments raised in defendant's point IV. See N.J. Div. of Youth and Family Servs. v. M.C. III, 201 N.J. 328, 339 (2010) (observing "issues not raised below will ordinarily not be considered on appeal unless they are jurisdictional in nature or substantially implicate the public interest").

I.

The trial court conducted a two-day FRO hearing, during which it considered the testimony of both parties, documentary evidence, and video recordings from the day of the incident. According to the undisputed trial record, the parties cohabitated for about one year, but ended their relationship when plaintiff, B.D., was five months pregnant with the couple's only child, F.D. Parenting time was not established by court order; plaintiff permitted defendant to visit F.D. three times per week, for one hour per visit, in her home. Plaintiff and F.D. lived with plaintiff's mother, who often was present during defendant's visits. The issuance of the FRO relates to acts that occurred during defendant's visit on January 19, 2019. The visit was prescheduled but, at plaintiff's request,

it occurred earlier in the day than usual.  Plaintiff's mother was not home during the visit.

Plaintiff testified that when defendant arrived, he pushed the front door into her and F.D., causing plaintiff to strike the closet doors located in the foyer behind her.  Plaintiff was "stunned" by defendant's action.  She told the court defendant appeared "angry," "high" on drugs, and "looked like something was wrong."  Defendant's demeanor frightened plaintiff and F.D., who started to cry.  Defendant took F.D. from plaintiff's arms and placed the child on his lap, but F.D. cried and wiggled away from him.  Defendant "threw his head back in frustration," stating in an "aggressive and raw" manner, "I'm going to kill her."  Plaintiff did not know whether that comment was directed at her or F.D., but she believed they both were in imminent danger.  Because defendant "had already pushed his way in[to]" her home, plaintiff was "terrified."

Plaintiff picked up F.D. who was still fussing.  Claiming the child was "crying" and "sick," defendant said he would return the following day instead of continuing his visit with F.D.  Plaintiff denied defendant's request.  Instead, plaintiff attempted to "calm down the situation" because she feared F.D.'s crying would cause defendant to "snap" as he had done on prior occasions.  Plaintiff compared her interaction with defendant to "walking on eggshells."

Thereafter, defendant captured the parties' interactions on his cellphone's video camera, despite plaintiff's requests to stop and leave the home. Plaintiff called the police, but defendant continued recording. Plaintiff testified that defendant said "something about a gun" as he left the home, but the statement was not captured on defendant's cellphone recording. Plaintiff also stated she told dispatch defendant "had been pushy with [her]," but that statement was neither captured on defendant's cellphone recording nor the 9-1-1 audio recording. Plaintiff did not advise the responding officer that defendant pushed open the front door or threatened her. She claimed she was "very numb to [defendant's] threats sometimes, because he threatens [her] so often." But on the date of the incident, plaintiff feared defendant might follow through with his threats because her mother was not home.

Plaintiff also testified about prior incidents of domestic violence:

> There was a whole history of him just bullying me, strangling me, pushing me, threatening me. I know what this gun looks like because he's pointed at it to me before [sic].
>
> And if I didn't have sex with him, he would come . . . and point at it. And [say:] "If you tell anyone, I'll fucking kill you." . . . I denied him sex one time and he came in and pulled the shower curtain down on me. I was taking a shower. I was pregnant. And then I had to have sex with him after that.

5

"And you know, if you tell anyone, I've got this gun, I'll fucking shoot you." That's what he sa[id] to me.

Confirming she had filed a domestic violence complaint in Burlington County related to the shower incident, plaintiff acknowledged she did not allege defendant forced her to engage in sexual intercourse. Plaintiff claimed she was "too scared" and "too embarrassed" to include that allegation in her previous complaint. Unrepresented by counsel at the prior FRO hearing, plaintiff did not tell that trial court about "all of the issues that [she was] having that made [her] fear for safety." Again, she claimed she was embarrassed and afraid to disclose those issues to the Burlington County family court, which ultimately denied her application for an FRO.

Following plaintiff's testimony, the trial court in the present matter denied defendant's motion for a directed verdict. In essence, the court gave great weight to the parties' prior domestic violence history, including the "horrific rape," which caused plaintiff to fear defendant "every time she sees [him]."

Defendant offered a vastly different version of the events. He denied pushing plaintiff or pushing the door into her, claiming instead that plaintiff "opened the door and welcomed [him] inside just like she always does." Defendant said he "absolutely" did not threaten to kill plaintiff on January 19,

6

or on any prior occasion; nor did defendant force plaintiff to have sexual relations against her will. Implying he made the video recording as evidence to provide a family judge in a future parenting time proceeding, defendant stated the recording was "not about a threat." Defendant acknowledged he had a shotgun in his home.

Within hours of the incident, plaintiff filed her initial complaint alleging terroristic threats, N.J.S.A. 2C:12-3, a predicate act of domestic violence under the PDVA, N.J.S.A. 2C:25-19(a)(3), upon which a TRO was granted. Five days later, plaintiff filed an amended complaint, and was granted an ATRO. That complaint added predicate acts of assault, N.J.S.A. 2C:12-1; N.J.S.A. 2C:25-19(a)(2), and harassment, N.J.S.A. 2C:33-4; N.J.S.A. 2C:25-19(a)(13). Plaintiff alleged defendant pushed her into the closet doors when he entered her home, video recorded plaintiff, and mentioned he had a gun. Plaintiff also alleged a prior history of domestic violence, including "forced . . . sexual relations."

Following summations, the trial court rendered an oral opinion. Commenting at the outset that the parties presented "a very involved, difficult case for the court to render a decision," the court referenced the prior domestic violence trial, noting plaintiff was unrepresented. The court pondered whether

it could consider the facts of that incident, which were set forth in the present

domestic violence complaint. The court elaborated:

> I heard testimony yesterday from . . . plaintiff that she was forcibly raped by . . . defendant. Defendant may not even think that he was raping her; [he] thought that he . . . had his rights to . . . have sex with her. And I'm satisfied, beyond any doubt at all, that his [sic] woman was forcibly raped. And, since that time, since that relationship, she is extremely fearful of . . . defendant.
>
> That fear goes on at the time of the relationship and goes on from that moment in time through today. She's afraid of him. And when he comes over to that house, she's afraid of him. And when she has to deal with him with the child, she's afraid of him. She calls 9-1-1; she's afraid of him.
>
> She says that . . . defendant pushed her into the door. Sometimes people do things like that and aren't aware of it. But I'm satisfied that there was a violation of 2C:33-4(b) offensive touching, where she was pushed by the defendant coming in that house.
>
> That's how we start out with the harassment on that particular day; that she tells . . . defendant later on with the video, leave. Defendant . . . slowly leaves that house. Well, when someone tells you to leave, you're supposed to leave, not slowly talk about it and continue on with the videotaping of the process.
>
> The predicate act . . . as Silv[er][2] requires us to determine in a case of this nature, . . . must occur at the time that the police are coming to that house. That's the

---

[2] See Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006).

> problem in this case. Was, was there a[n] harassment?
> Was there offensive touching? I find that there was;
> that the defendant pushed himself in that house.

The court thereafter entered the FRO, ordered a psychiatric evaluation of defendant and supervised parenting time. This appeal followed.

## II.

Our scope of review is limited when considering an FRO issued by the Family Part. See D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). That is because "[w]e grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." Ibid. "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Deference is particularly appropriate where the evidence is largely testimonial and hinges upon a court's ability to make assessments of credibility. Ibid. It is axiomatic that the judge who observes the witnesses and hears the testimony has a perspective the reviewing court simply does not enjoy. See Pascale v. Pascale, 113 N.J. 20, 33 (1988) (citation omitted). We review de novo the court's conclusions of law. S.D. v. M.J.R., 415 N.J. Super. 417, 430 (App. Div. 2010).

A-3436-18T2

The entry of an FRO requires the trial court to make certain findings, pursuant to a two-step analysis.  See Silver, 387 N.J. Super. at 125-27.  Initially, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred."  Id. at 125.  The trial court should make this determination "in light of the previous history of violence between the parties."  Ibid. (quoting Cesare, 154 N.J. at 402).  Secondly, the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse."  Id. at 127 (citing N.J.S.A. 2C:25-29(b) (stating, "[i]n proceedings in which complaints for restraining orders have been filed, the court shall grant any relief necessary to prevent further abuse")); see also J.D. v. M.D.F., 207 N.J. 458, 476 (2011).

In the present matter, the trial court concluded defendant committed an act of harassment by offensive touching.  See N.J.S.A. 2C:33-4(b).  Relevant here, subsection (b) provides that a person commits harassment "if, with purpose to harass another," he "[s]ubjects another to striking, kicking, shoving, or other offensive touching . . . ."  In finding defendant violated subsection (b), the court tersely found plaintiff "was pushed by . . . defendant coming in [her] house."

10

Although the court recognized "[s]ometimes people do things like that and aren't aware of it," the court failed to explicitly determine whether defendant acted with the purpose to harass plaintiff, a necessary element of the offense.

As our Supreme Court has cautioned when construing other parts of the harassment statute, "[a]lthough a purpose to harass can be inferred from a history between the parties, that finding must be supported by some evidence that the [defendant]'s conscious object was," in this case, to push, strike, shove or otherwise offensively touch plaintiff as he entered plaintiff's home. J.D., 207 N.J. at 487 (citing State v. Hoffman, 149 N.J. 564, 577 (1997)). A purpose to harass may be inferred from the evidence. State v. McDougald, 120 N.J. 523, 566-67 (1990). Common sense and experience may also inform a determination or finding of purpose. Hoffman, 149 N.J. at 577.

Here, however, the trial court failed to specify the inferences it drew from the evidence.[3] Instead, the court summarily focused on plaintiff's fear of defendant. We do not minimize the court's concerns nor necessarily question its

_____

[3] As stated above, the trial court's decision referenced defendant's refusal to leave immediately when requested by plaintiff, but the court did not expressly determine that conduct constituted harassment. Because plaintiff's complaint did not allege defendant failed to leave her home, we reject plaintiff's argument on appeal that the record supports a violation of N.J.S.A. 2C:33-4(c), proscribing "any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person."

11                                                          A-3436-18T2

assessment. However, a trial court is required to make specific findings of fact and state its conclusions of law. R. 1:7-4(a) (requiring the court in non-jury trials "by an opinion or memorandum decision, either written or oral" to "find the facts and state its conclusions of law"); see also Elrom v. Elrom, 439 N.J. Super. 424, 443 (App. Div. 2015). As the Court has long recognized, the lack of sufficient findings of fact and conclusions of law does a disservice to our informed review of any matter. See Curtis v. Finneran, 83 N.J. 563, 570 (1980) (observing "[n]aked conclusions do not satisfy the purpose of R. 1:7-4"). As we noted in Ducey v. Ducey, 424 N.J. Super. 68, 72 (App. Div. 2012) (quoting R.M. v. Supreme Court of N.J., 190 N.J. 1, 12 (2007)), "[f]actfinding 'is fundamental to the fairness of the proceedings and serves as a necessary predicate to meaningful review[.]'"

On this record, we also are unable to determine whether the court found plaintiff established the other predicate acts alleged in her complaint. See Silver, 387 N.J. Super. at 125. Further, although the court cited plaintiff's fear of defendant, it failed to expressly engage in the analysis required by the second Silver prong, i.e., that a restraining order is required to protect the plaintiff from future acts or threats of violence. Id. at 127.

In sum, the trial court failed to sufficiently articulate its factual findings and conclusions of law. Although the record may contain sufficient evidence to sustain the entry of an FRO, that evidence is partly dependent upon the court's credibility findings, which were likewise non-existent. Those findings are particularly important here where the parties' versions of the events on the date of the incident and in their prior history were diametrically opposed. Accordingly, our review of the record reveals that the trial court's findings of fact supporting its conclusion that defendant violated N.J.S.A. 2C:33-4 are insufficient for effective appellate review.

We therefore vacate the FRO, reinstate the ATRO, and remand the matter to the trial court for amplified findings of fact and conclusions of law based on the existing record. The trial court shall determine whether defendant acted with the purpose to harass plaintiff to support the court's determination that defendant committed the predicate act of harassment, and whether defendant committed the predicate acts of terroristic threats and assault as alleged in plaintiff's complaint. If the court finds defendant committed any predicate acts, it shall determine and make findings as to whether an FRO is required to protect plaintiff from future acts or threats of violence. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3436-18T2